## Borough of MANCHESTER *v.* RESERVE Township.

Where certain parts of the minute-book of a board of school directors were read in evidence to the jury by one party, and the counsel of the other party, whilst addressing the jury, read and commented upon other parts of the book not given in evidence, to which objection was made; and the court in their charge directed the jury to confine their attention to such parts of the minute-book as were read in evidence; it was *held* that such direction was correct.

The proper construction of the resolution of the 18th of April, 1843, entitled a "Resolution relative to the education of the poor in the non-accepting school districts," in relation to the distribution of the school-fund, where a new school district is formed by the erection of a new from an old township, which had accepted the provisions of the common-school law, *is*, that the whole fund, as well the state appropriation as the school-tax of the current year *only*, in which the new school district is formed by the erection of the new from the old township, is to be divided *pro rata* between the old and new townships, according to the number of taxable inhabitants, which they respectively contained at, or immediately after, the division; that all payments and indebtedness of the school treasury for that year must be examined and charged to that part of the district which has received the same, or for which the debt was contracted; and if either party have received more than their due proportion, according to the rule stated, they must be charged with that amount.

Where the school-taxes remain uncollected until after the formation of a new school district, by the erection of a new from an old township, the new district is entitled to participate in the fund when collected, for whatever years the taxes outstanding may have been assessed.

ERROR to the District Court of Alleghany county.

*Sept.* 18.   This was *assumpsit* by "The School Directors of the Borough of Manchester," the plaintiffs in error, against "The School Directors of the Township of Reserve," to recover a *pro rata dividend* of the school-tax and state appropriation, under the resolution of the 18th of April, 1843, entitled a resolution, "Relative to the education of the poor in the non-accepting school districts."

It appeared on the trial, that by the 47th section of the act of the 9th of March, entitled "An act regulating election districts," the borough of Manchester, in the county of Alleghany, and township of Reserve, was made a separate election and *school district*. Under the 21st section of the act of the 13th of June, 1836, the school year of 1844 commenced on the *first Monday* of June, 1843, and ended on the first Monday of June, 1844. The plaintiff proved that John Sampson was treasurer of the school district of Reserve township in 1843, and up to March, 1844, when he went out; that the whole amount of the school-tax duplicate for 1844 was $711 75; that the amount of school-tax paid to Sampson, whilst he was treasurer, was $365 50, the last payment of which was made to him in January, 1844; and that the balance of the duplicate, after deducting lost taxes and commissions of the collector, was paid by the

collector to Mr. Lowrie and Mr. Wood; but in what capacity they received it, did not appear on the paper-book. The collector for 1844 settled in the latter end of the summer of that year, and paid over the balance. It appeared that the balance in the hands of Mr. Sampson, on the 9th of March, 1844, was $19 31. When the schools commenced in 1843, there were no funds in his hands, as treasurer, and the teachers agreed to wait until the tax was collected. According to the triennial assessment list of 1843, Reserve township, including the borough of Manchester, contained five hundred and four taxable inhabitants. In the spring of 1844, shortly after Manchester was made a separate school district, it contained between one hundred and seventy-five and two hundred taxable inhabitants. A duplicate for Manchester was made out in June, 1844.

The defendant proved, that during the school year of 1844, a number of children from Manchester went to a school in Reserve township. The school-house in which this school was kept, was near to Manchester, but in Reserve township. The defendant offered in evidence the minute-book of the school directors of Reserve township for the school year of 1844, for the purpose of accounting for the appropriation and disbursement of the fund collected and received for that school year. This was objected to by the plaintiff; but the court overruled the objection, and admitted the book for the purpose offered. This ruling of the court was plaintiff's first bill of exception. Minutes of the 9th of November, 1844, were then read, from which it appeared that on a settlement with Lidoo, the collector, the amount collected on the duplicate was  -  -  -  $625
State appropriation,  -  -  -  -  -  -  -  382

$1007

From the check book given in evidence, it appeared that the amount paid for the school in Manchester was $478 78.

The foregoing is a statement of all the material facts given in evidence on the trial, *as disclosed by the paper-book.*

The counsel for the plaintiff requested the court to charge the jury that the defendant was not entitled to credit for any disbursements made out of the treasury *prior* to the 9th of March, 1844.

The charge of his honour, Judge HEPBURN, answering this point in the negative, is contained substantially in the opinion of this court delivered by his honour, Judge Rogers.

The counsel of the plaintiff, whilst addressing the jury, read an extract from the minute-book, offered in evidence by the defendant,

showing that certain moneys, being a school-tax assessed by Reserve township, before the borough of Manchester was erected into a separate school district, had been collected and paid to Reserve township after the separation. And that the treasurer, for the school year 1844, had charged himself with taxes assessed for the school year 1842, but not paid over till after Manchester was made a separate school district.

The counsel of the defendant objected to this being read, or commented on by plaintiff's counsel, on the ground that it had not been read to the jury, and contended that only such parts of the book were in evidence as had been read.

Whereupon, the judge charged the jury, that they should only take notice of such parts of the minute-book as had been read to them; that the remaining contents of the book were not in evidence.

The record was removed to this court by the plaintiff, who assigned the following errors:

1. The court erred in admitting the minute-book for reasons stated in plaintiff's first bill of exceptions.

2. The court erred in their answer to the point submitted by plaintiff's counsel.

3. The court erred in saying to the jury that they should only take notice of such parts of the minute-book as had been read to them, and that the remaining contents of the book were not in evidence.

*McConnell* and *Hampton*, for plaintiff in error.

*H. W. Williams*, contrà.

*Sept.* 23. ROGERS, J.—There is nothing wrong in the direction that the jury should only take notice of such parts of the minute book as had been read to them. What is or is not in evidence, can only be determined by the court which tries the issue, and it would be wrong for us to rule in opposition to their decision, that because a party has read part, he is at liberty to read and comment on every sentence and item in the whole book. This will take the opposite party by surprise, and frequently have the effect of preventing him from rebutting or explaining it. For the purpose of saving time, parties sometimes agree that all that is in the book pertinent to the case, may be taken to be in evidence; but in the absence of express consent, it cannot be so considered. If the plaintiff was surprised, he might have asked the court to withdraw a juror,—a request which, no doubt, would have been granted, if the

justice of the case had required it. Having, however, taken his chance of a verdict, he is not entitled to relief either on motion for a new trial or writ of error.

But was the court right in their construction of the resolution of the 18th April, 1843, entitled a resolution relative to the education of the poor in the non-accepting school districts?

The resolution reads thus: " Resolved, That in all cases where a new school district shall have been, or hereafter may be formed, by the erection of a new township from an old township or townships which had accepted of the provisions of the common-school law, such new district shall be entitled to receive a *pro rata* dividend or distribution according to the number of taxables in such new district when compared with the district or districts from which said new district may be or shall have been formed, of all moneys to which such district was entitled and received under the several provisions of the common-school laws of this Commonwealth, for any year or years previous to such provisions."

The plaintiffs contend that they are entitled to a dividend of the balance in the treasury on the 9th March, 1844, the time when the new township was erected, irrespective of all previous disbursements.

On the other hand, the defendants insist, and so the court instructed the jury, that the school-fund for the current year only, when the division takes place, is to be divided *pro rata* between the old and new townships according to the number of inhabitants which they respectively contain at or immediately after the division. That all payments and indebtedness of the school treasury for that year, must be examined and charged to that part of the district which has received the same, or for which the debt was contracted. And if either party had received more than their due proportion according to the rule stated, they must be charged with that amount.

Although the resolution is not expressed very clearly, we are of opinion that the construction given is a fair and equitable one, and will best carry out the intention of the legislature. The resolution speaks " of all moneys to which such old district was *entitled* and *received* under the several provisions of the common-school law of the Commonwealth for any year or years previous to such provision." Nevertheless, we cannot believe it was the intention of the legislature to go beyond the current year except where (as the construction satisfies the words as well as the spirit of the resolution) some of the taxes for previous years may be in arrears. We are averse to extending the period, because the investigation of the accounts, from the commencement of the school-district system, would be apt

to engender litigation and strife, and an expense frequently more than the amount in controversy was worth. When the taxes remain uncollected, we agree, the new district is entitled to participate in the fund for whatever years the taxes may have been assessed. Cases may be readily supposed, where the construction contended for by plaintiff would lead to injustice. Thus, where there are two or more school districts in a township afterwards divided, one may, immediately before the division, receive all to which they are entitled, the other none: would it not be unjust, that the receiving district should, notwithstanding, be entitled to share the remainder of the funds merely because it reached the treasury at or immediately before the division, and, consequently, was in the treasury at the time. Such a rule is not to be desired, as it would frequently by management be made to operate very adversely to the interest of the new district.

Whether there was error in the application of these principles to the facts, we cannot determine. If there were, the remedy was on a motion for a new trial. Judgment affirmed.